INHABITANTS OF HAMPDEN *vs.* INHABITANTS OF LEVANT.

*Pauper.   Residence—when it ceases.*

If, while absent from his place of residence, a person form an intention to abandon it, his residence then as effectually ceases, as if he had intended not to return when he left it.

To prevent his gaining a settlement, it is not absolutely essential that the pauper should make the application for aid.

Application of *Corinth* v. *Lincoln,* 34 Maine, 310, in relation to supplies received indirectly.

ON FACTS found by a referee.

The case is stated in the opinion.

*S. W. Matthews,* for the plaintiffs.

*A. W. Paine,* for the defendants, contended *inter alia.*

That if during his stay in the army, the alleged pauper formed an intention of going to Winterport to live after his return, this would not affect his settlement in Hampden, until that intention was carried into effect.   So long as the idea was in intention alone, no effect could be produced upon his rights in any respect,—his rights of suffrage, school, or settlement, or the duties of taxation, draft, or other public charge.   *Hallowell* v. *Saco,* 5 Greenl. 143 ; *Wayne* v. *Green,* 21 Maine, 357 ; *Worcester* v. *Wilbraham,* 13 Gray, 586.

*Corinth* v. *Lincoln,* 34 Maine, 310, does not sustain the conclusion, that a boarder is affected by the supplies furnished by his landlord, of which the boarder partakes ; but the careful language of the opinion excludes it.   No hint is therein given that any interference is intended with the principles settled in *Hallowell* v. *Saco, sup. ; Green* v. *Buckgeld,* 3 Greenl. 136 ; *Raymond* v. *Harrison,* 11 Maine, 190 ; *Bangor* v. *Readfield,* 32 Maine, 60 ; *Garland* v. *Dover,* 19 Maine, 441 ; and *Sanford* v. *Lebanon,* 31 Maine, 124.

In *Corinth* v. *Lincoln*, the parties were father and daughter, the latter of whom, though of age, had returned to her father's house, " to find a home in his family," to be " an inmate of his family." And the court say it was necessary to appear " that she had her home at her father's," " a home which must be the place where she has the design and the right for the time being to abide," etc. See also, the remainder of the opinion.

Counsel also cited *Oakham* v. *Warwick*, 13 Allen, 90 ; *Taunton* v. *Middleboro'*, 12 Met. 38.


APPLETON, C. J.    The settlement of the pauper was originally in the defendant town.    In middle of December, 1857, and a few days before he became of age, he left Levant and went to Hampden to reside.    His settlement, however, would remain in the defendant town, until he should gain a new one elsewhere in some of the modes prescribed by statute, and the burden is on the defendant to show that a new one has thus been gained.

The pauper, in December, 1857, went to Hampden with the expressed intention of getting work there, and not intending to return to Levant.    He had two married sisters residing in Hampden, with whom he spent most of the time.    In 1860, he voted there, and in 1861, he enlisted in the 12th Maine regiment and served until the expiration of his enlistment, when he reënlisted and was allowed on the quota of Hampden.    He came to Hampden on a furlough in 1864, and spent most of the time at his sister's Mrs. Knowles, paying there his board in part.    The mother of the pauper had re-married, and was living in Winterport.    About the middle of July, 1865, while in the service he formed the resolution of abandoning Hampden, and making his home in Winterport; sent his mother $160, and requested her to purchase land in that town adjacent to that on which she lived; sent her $160 on leaving the army, went to his mother's, worked on the land some time, became dissatisfied with his trade, sold the land to the person with whom the bargain was made, and then went to Carmel, where he has since resided.

The question presented is whether there are five continuous years of residence in Hampden, in which there have been no supplies furnished the pauper.

The pauper ceased in July, 1865, to reside in Hampden. He was not there bodily at that time. He has not resided there since. He then formed the resolution of abandoning his residence in Hampden and to reside in Winterport. The intention and the absence bodily from the plaintiff town ended his residence there. It was not necessary that he should return to Hampden, and instantly leave with the intention of abandoning his residence. Absence from Hampden and the intention not to return, and to go elsewhere to live, and their coexistence sufficed to effect a change of residence. The facts of sending the money, of requesting his mother to purchase land in Winterport, and his going there, after leaving the army, together with his absence from Hampden and his intention to abandon that as his plan of residence, and to establish a new one in Winterport, show that he then ceased to have any residence or home in Hampden.

The residence is broken up when one leaves with the intention not to return. But being absent, if the intention not to return is formed while thus absent, is the residence any the less broken up? Is it necessary, when one leaves, having no formed intention of abandoning his then residence, and while absent, forms the intention of not returning, that he should return and start anew with an intention of not returning, before his residence can be regarded as legally abandoned. When one leaves his place of residence, and while absent forms the intention of not returning, his residence as much ceases as if at that date he had left such residence with the intention of not returning.

Were there five years of continuous residence by the pauper in the town of Hampden, between the middle of December, 1857, when he moved into Hampden, and July, 1865, when he ceased to reside there, without his " receiving, directly or indirectly, supplies as a pauper ? "

The families of both his sisters were poor and received supplies

from the plaintiff town every year, from 1859 to 1867. The pauper spent his time, while in Hampden, in the families of his sisters,—and most of it with Mrs. Knowles, and agreed to pay for his board, and did pay it in part. It does not appear that he paid anything while residing with his other sister. While living in the family of Mr. Knowles, the latter called twice on the plaintiff town for assistance for the pauper, and they agreed to pay him for the board the pauper had agreed to pay but had not. The plaintiff town, on June 5, 1860, paid $4.50 for three weeks' board, and on December 9th, $7.50 for five weeks' board. These amounts were repaid by the town of Levant. The pauper, however, did not call on the town, nor did he know that Knowles, whose family was receiving aid, in whose family he was boarding, had called on the town for aid for him, etc.

The two families, in which the pauper boarded, were receiving supplies during the time he lived in Hampden. It could hardly be otherwise, than that the fact was known to him. These supplies must be regarded as supplies furnished indirectly within the case of *Corinth* v. *Lincoln*, 34 Maine, 310. In addition to those supplies the town of Hampden paid for his board at two several times in 1860, and the sums so paid were repaid by the defendant town. These supplies break up the continuity of time required by the statute. They were furnished prior to five years from the middle of December, 1857, when the pauper came into Hampden, and after that date, five years did not elapse before he abandoned his residence there in July, 1865. It was not necessary that the pauper should make the application for aid to prevent his gaining a settlement, for in *Corinna* v. *Exeter*, 13 Maine, 321, the aid was furnished without appplication on the part of the pauper and against his earnest protestations.          *Defendants defaulted.*

Cutting, Kent, Walton, and Danforth, JJ., concurred.